# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY
### MITCHELL H. COHEN U.S. COURTHOUSE
### 401 Market Street
### P.O. BOX 2067
### CAMDEN, NJ 08101-2067

FILED
JAMES J. WALDRON, CLERK
MAR - 9 2016
U.S. BANKRUPTCY COURT
CAMDEN, N.J.
BY_____ DEPUTY

**Andrew B. Altenburg, Jr.**
**U.S. BANKRUPTCY JUDGE**

(856) 361-2320

March 9, 2016

## NOT FOR PUBLICATION

Robbin Bender
208 Roanoke Road
Cherry Hill, NJ 08003

Sandra Bender
208 Roanoke Road
Cherry Hill, NJ 08003

Daniel Reinganum. Esq.
McDowell Posternock
Apell & Detrick, PC
46 West Main Street
Maple Shade, NJ 08052

     **RE:**   **Bender v. Hargrave**
           **Adv. Pro. No. 15-02450-ABA**

### MEMORANDUM DECISION

Dear Ms. Robbin Bender, Ms. Sandra Bender, and Mr. Daniel Reinganum:

This is the court's memorandum decision. In addition to the record created on March 1, 2016 ("March 1 Hearing"), the following constitutes the court's findings of facts and conclusions of law.

### PROCEDURAL HISTORY

Plaintiffs Robbin Bender and Sandra Bender (the "Plaintiffs") are dissatisfied with the actions taken during the bankruptcy case[1] of their late sister, Lydia J. Bender (the "Debtor"). Plaintiffs filed suit in the Superior Court of New Jersey (the "State Court Action") against an employee of the United States Trustee's Office - Assistant United States Trustee Martha Hildebrandt ("Hildebrandt"), and the court-appointed chapter 7 trustee, John W. Hargrave ("Hargrave"). The United States Attorney, on behalf of Hildebrandt then removed the State Court Action to the United States District Court for the District of New Jersey (the "District Court"). The case was captioned *Bender v. Hargrave, et al.*, and assigned case number 15-cv-

---

[1] *In re Lydia J. Bender*, Bankr. No. 11-28437-JWH (D.N.J. Bankr.) (the "Bankruptcy Case").

6936-JBS-JS (the "District Court Action"). Chief Judge Jerome B. Simandle of the District Court found that the State Court Action was properly removed to the District Court. (Doc. 1-1, at 3).[2]

On September 24, 2015, the United States Attorney filed a motion to dismiss the District Court Action as to Hildebrandt. Plaintiffs opposed that motion. Hargrave also filed a limited objection to the motion to dismiss asserting that both the state court and the District Court lacked subject matter jurisdiction due to Hargrave's immunity as trustee under the *Barton* doctrine (*Barton v. Barbour*, 140 U.S. 126 (1881) and its progeny).

On November 25, 2015, the District Court granted the motion to dismiss Plaintiffs' complaint against Hildebrandt. The District Court also found that it lacked jurisdiction over Plaintiffs' remaining claims against Hargrave and referred[3] the remainder of the District Court Action to this court to determine:

> . . . whether Plaintiffs can "make a prima facie case against the trustee in the bankruptcy court, showing that its claim is not without foundation." *In re Day*, No. 14-1908, 2014 WL 4271647, at *3 (D.N.J. Aug. 28, 2014) (citing *In re VistaCare*, 678 F.3d at 232). The Bankruptcy Court may determine whether the claims against Hargrave are barred by *Barton* and, if not barred, may grant leave to Plaintiffs to proceed in a court of competent jurisdiction over the merits of their claim.

(Doc. 1-1, at 9).

On December 23, 2015, Plaintiffs submitted an "Injunction Based on Judge Simandle's Order Dated November 25, 2015." The District Court construed this submission as one for reconsideration of the District Court's dismissal of Plaintiffs' action, because it merely rehashed their original complaint. On January 14, 2016, the District Court denied Plaintiffs' request for reconsideration and entered an order finding that in addition to being untimely, Plaintiffs' motion for reconsideration lacked merit.[4] The deadline for Plaintiffs to file a motion to reconsider or appeal that order has passed and the order is now a final order.

As a result of the District Court's decision and order in the District Court Action, the remaining matter was referred to this court and set up as an Adversary Proceeding assigned Case No. 15-02450-ABA. On January 20, 2016, Hargrave filed a Motion for an Order: (1) Denying Leave to Proceed Against John W. Hargrave In Other Forums; (2) To Dismiss Adversary Proceeding As To John W. Hargrave With Prejudice; and (3) Enjoining Robbin Bender And

---

[2] Bankruptcy courts constitute "a unit of the district court to be known as the bankruptcy court for that district." 28 U.S.C. § 151. As a result, a bankruptcy court may take judicial notice of the district court's record/files. *See In re Davis*, 278 B.R. 429, 430 (Bankr. W.D. Mich. 2002); *St. Louis Baptist Temple, Inc. v. Federal Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir.1979); *In re Wright*, 187 B.R. 826, 829 (Bankr.D.Conn.1995); and *In re Walters*, 176 B.R. 835, 856 n. 12 (Bankr.N.D.Ind.1994).

[3] 28 U.S.C. § 157(a).

[4] *See* Doc. 22 in the District Court Action.

Sandra Bender From Filing Future Lawsuits Against John W. Hargrave Without First Seeking Leave Of This Court (the "Motion"). (Doc. 6). The Motion was originally returnable on February 16, 2016, but on February 9, 2016, Plaintiffs requested an extension of time to respond to the Motion, which was granted. Eventually, on February 23, 2016, Plaintiffs filed a Certification in Opposition to the Motion (the "Opposition"). (Doc. 12). The Motion was heard at the March 1 Hearing at which time, all parties appeared and argued their cases.[5] This matter is now ripe for disposition.[6]

## FINDINGS OF FACTS

The Debtor filed a voluntary chapter 7 bankruptcy case on June 16, 2011. Hargrave was appointed as the chapter 7 trustee in the Bankruptcy Case on June 17, 2011 by the Office of the United States Trustee ("United States Trustee"). The Bankruptcy Case when filed, was designated by the Debtor as a no asset chapter 7 case. (Doc. 1 in the Bankruptcy Case).[7] As a result of this designation, the court issued a *Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines* to all creditors and parties-in-interest identified by the Debtor on her Schedules and Mailing Matrix. That Notice identified the Bankruptcy Case as a chapter 7 individual "no asset case". (Doc. 4 in the Bankruptcy Case).

The Debtor's father was Bernard Bender (deceased 1985), the Debtor's mother was Herta Bender (deceased 2007), and Plaintiffs in this matter are the Debtor's sisters. Raymond J. Davidson ("Davidson") is the holder of a power attorney for Plaintiffs. In a letter dated September 14, 2011 addressed to the Honorable Judith H. Wizmur (ret.), Plaintiffs, through Davidson, alleged that the Debtor failed to disclose her position as administrator of her late-father's estate, failed to disclose her status as a beneficiary of her late-father's estate, failed to disclose assets of her late-father's estate, failed to inform the Court that she held a second social

---

[5] Plaintiffs alleged for the first time at the March 1 hearing that that they did not receive Hargrave's Exhibits to the Motion. The court finds that this statement lacks credibility because if they felt they were not provided with all documentation, why would they not raise the issue in their original request for an extension to file a response or in their Opposition?

[6] Robbin Bender attempted to supplement the record after the close of the March 1 Hearing, by letter dated March 7, 2008. (Doc. 14). In addition to being inappropriate without a motion for leave to supplement the record, and without good cause, *see M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co.*, CIV.A. 97-1568 (JAG), 2007 WL 979854, at *12 (D.N.J. Mar. 30, 2007) (noting that late submission is unfairly prejudicial to the party's adversary), it is irrelevant. Robbin Bender appeared to be seeking to add evidence that Hargrave had been admonished by the Disciplinary Review Board (although she does not include a copy of the admonition). This is not relevant to whether Hargrave committed malpractice in the Bankruptcy Case, and would be inadmissible at trial. *See* Fed. R. Evid. 404(a)(1) (prohibiting evidence of a person's character or trait, or of prior crimes, to prove that he or she acted accordingly). Similarly, she complained about behavior of Hargrave and his attorney, Mr. Reinganum, after the March 1 Hearing ended and I left the courtroom (but Courtroom Security Officers were present). She also attached information regarding reporting bankruptcy crimes to the United States Attorney General. But the bankruptcy crimes referred to concerned fraudulent oaths made by a debtor, not a trustee. Thus the court will not consider this late filing.

[7] "A bankruptcy court may take judicial notice of the docket of the main case in an adversary proceeding." *In re Flickinger*, No. 1:09-BK-08739MDF, 2010 WL 3431659, at *2 (Bankr. M.D. Pa. Aug. 30, 2010) (citing *In re Di Vittorio*, 430 B.R. 26 (Bankr.D.Mass.2010)); Federal Rule of Evidence 201. *See also In re Lenz*, 448 B.R. 832, 833-34 (Bankr. D. Or. 2011); *In re Knight*, No. 10-30580-RLD7, 2010 WL 3733534, at *1 (Bankr. D. Or. Sept. 17, 2010) *aff'd*, No. ADV 10-03092, 2011 WL 6934480 (B.A.P. 9th Cir. Nov. 7, 2011).

security number, and failed to list a debt owed to her disabled sister, Heidi Marie Bender. (Doc. 6-3, at 2).

On her Schedule B to her bankruptcy petition, the Debtor listed, with an unknown value. a right to an inheritance, describing the right as follows:

> Debtor's Mother Died Intestate Approx. 4 Years Ago and Debtor is One of Five Living Children of Decedent. Sister has taken possession of the estate assets (including a house located at 208 Roanoke Road, Cherry Hill, NJ 08003) but has not sold the house in Cherry Hill, New Jersey, nor has she disbursed any funds to the debtor or her siblings. Debtor believes her sister is not administering the estate appropriately, is forging documents and is attempting to embezzle from the estate but she lacks financial resources to seek legal remedy.

(Doc. 1 in the Bankruptcy Case, at 22).

Hargrave investigated the matter and determined that the Debtor had a one-seventh interest in the proceeds from the estate of her father, Bernard Bender, and a one-fifth interest in the proceeds from the estate of her mother, Herta Bender. However, no actions had been made to administer these estates, and the court-appointed administrator of the estates (Plaintiff Sandra Bender) was residing at 208 Roanoke Road, Cherry Hill, NJ (the "Property"), which was the primary asset of these estates. Therefore, Hargrave determined in his business judgment that he would not actively pursue the liquidation of the estates.

To protect the bankruptcy estate's interest in a possible inheritance from the estate of Herta Bender or Bernard Bender, however, Hargrave filed: (1) a motion which provided that the estate retained ownership of those assets, notwithstanding case closing. An *Order For Retention Of Asset After Closing Of Case* was entered on November 18, 2011; (2) a Notice of *Lis Pendens* with the Register of Deeds for Camden County, which will prevent the Property from being sold without notice to the bankruptcy estate; (3) notice with the Surrogate's Office regarding the bankruptcy estate's interest in the probate estate of Herta Bender; and (4) a notice of appearance and request for service of documents in the Court of the Commonwealth of Pennsylvania in order to protect the bankruptcy estate's interest in the probate estate of Bernard Bender. Plaintiffs admit that Hargrave has made no actual attempts to sell the Property.

Hargrave filed a Report of No Distribution on November 22, 2011. On December 9. 2011, the Debtor's case was closed and Hargrave was discharged as trustee. Subsequent thereto. the November 18, 2011 *Order For Retention Of Asset After Closing Of Case* was amended on July 11, 2013 to include the following language:

> All issues related to the estate of Herta Bender and Bernard Bender may be resolved in the appropriate forum, including the issue of whether, and to what extent, the debtor is entitled to a distribution from either her mother's or father's estates.

(Doc. 15 in the Bankruptcy Case).

On October 4, 2012, Davidson and Plaintiffs wrote a complaint to the United States Trustee Office claiming that Hargrave improperly handled the Bankruptcy Case. (Doc. 12-5, at 6). As a result of this complaint, the United States Trustee asked Hargrave to prepare and submit a report concerning the case administration. Hargrave submitted his detailed report to the United States Trustee on November 27, 2012 (the "Trustee's Report"). (Doc. 6-3). Hargrave disclosed in the Trustee Report that he appeared in a divorce matter on behalf of Bernard Bender (the Debtor's father) in 1978. Hargrave recently certified that he did not recollect the exact nature of his representation of Bernard Bender as it was 37 years ago but recalled it being very limited and not lasting. In the end, Hargrave was not paid by Mr. Bender and as a result, Hargrave eventually sued him for unpaid fees in 1979. He obtained a judgment, but never collected on the judgment.

The United States Trustee reviewed the Trustee's Report and in a detailed letter dated December 12, 2012 from Roberta DeAngelis to Davidson (the "United States Trustee's Letter") (Doc. 6-2 and Doc. 12-6, at 12-14), it was stated:

> After review of your correspondence, the electronic record of the case, and Mr. Hargrave's response, it would appear that the trustee acted appropriately in this case. In light of the likely cost of administering assets in comparison to their apparent value, Mr. Hargrave's actions in this case are consistent with his business judgment and his fiduciary duty to the bankruptcy estate.

(Doc. 6-2, at 3 and Doc. 12-6, at 14). Davidson then submitted the United States Trustee's Letter to the Honorable Judith H. Wizmur, bankruptcy judge in the Bankruptcy Case (Doc. 12-5, at 9). Judge Wizmur denied Davidson's request for a hearing on Hargrave's impartiality. (Doc. 12-5, at 10). In doing so, Judge Wizmur noted that the information had been "carefully and exhaustingly" considered by the United States Trustee. *Id.*

Unfortunately, the Debtor committed suicide on June 23, 2013. (Doc. 6-4). Plaintiffs explained that at the time of the Debtor's suicide, they were certain that Hargrave was the direct cause of the Debtor's death. Plaintiffs also conceded that at the time of the Debtor's death, they were not on speaking terms with the Debtor and were not a dependent of the Debtor. Finally, Plaintiffs acknowledged that they were and are not dependents of the Debtor and are not the trustee, administrator, executor, or appointed representative of, and in fact have nothing to do with, the Debtor's decedent estate.

An apparent point of contention in the Debtor's bankruptcy case was whether the Debtor was concealing assets of the estate of Bernard Bender, specifically, stock certificates, accounts in the name of Bernard Bender, and accounts in the names of companies owned or operated by Bernard Bender. Hargrave certified that when he questioned the Debtor, she denied that she had any of those assets, and that his only contact with the Debtor was at the Section 341 Meeting of Creditors, and then through her counsel, Greta Leigh, as necessary for the administration of her case. (Doc. 6-1, at 6 ¶39-41). Plaintiffs also complain that Hargrave did not return phone calls and did not inform them of the Debtor's 341 meeting of creditors. Finally, Plaintiffs did not appreciate Hargrave's demands against the Property and decedent's estates.

On October 22, 2013, Michael Bourke, the Debtor's former fiancé, and his sister, Nancy Bourke Patterson, turned over documents to Hargrave which were discovered when going through the Debtor's personal effects, which included original stock certificates. (Doc. 6-6. at 2). On December 4, 2013, Hargrave wrote to all of the remaining Bender heirs (including Plaintiffs and Davidson) advising them of his receipt of the documents and stock certificates and requesting that:

> Sandra Bender take immediate steps to sell the stock and the home. In the event that no meaningful action is taken by Sandra Bender with respect to both matters in the next ninety (90) days, [Hargrave] will file a motion in the probate court in Camden asking her to be removed as Executor and having a neutral third party appointed in her place to carry out what needs to be done to wind up the affairs of both of these Estates.

(Doc. 6-5). Hargrave claims no one has contacted him to facilitate the turnover of the documents and stock certificates and that he has not taken any action to liquidate the stocks or in any way monetize or profit from his possession of the stock certificates and documents. (Doc. 6-1, at 7 ¶50-52).

## CONCLUSIONS OF LAW

### A. The Roles and Duties of the United States Trustee and a Chapter 7 Trustee

"The United States Trustee Program is a component of the Department of Justice responsible for overseeing the administration of bankruptcy cases and private trustees under 28 U.S.C. §586 and 11 U.S.C. §101, *et seq.*" (www.justice.gov/ust). Under the Program:

> The United States Trustee is given the power under 28 U.S.C. § 586(a)(3) to "supervise the administration of cases and trustees in cases under Chapter 7, 11, and 13 , or 15 of title 11 by, whenever the United States trustee considers it to be appropriate" . . . While it is true that the administration of a case is generally left in the hands of private trustees and debtors in possession, it is the duty of the United States Trustee to supervise and oversee the administration of cases by trustees and debtors in possession who are serving therein. Expedition and efficiency are essential ingredients of all cases under the Code. The United States Trustee's duty is to see that "cases are not neglected, are moved with all due speed and are brought to a conclusion at the earliest time."

*In re Commercial Fin. Corp. of Nevada*, 16 B.R. 98, 100 (Bankr. D.D.C. 1981).

When a voluntary chapter 7 bankruptcy petition is filed, the United States Trustee for the region appoints a qualified and impartial case trustee to administer the case and liquidate the debtor's nonexempt assets. 11 U.S.C. §701. A chapter 7 trustee must be a disinterested person as defined by 11 U.S.C. §101(14). The term "disinterested person" means a person that—

**(A)** is not a creditor, an equity security holder, or an insider;

**(B)** is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

**(C)** does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

*Id.*

Generally, in a "no asset" case, the role of the chapter 7 trustee is limited. However, when there are assets:

> The primary role of a chapter 7 trustee in an asset case is to liquidate the debtor's nonexempt assets in a manner that maximizes the return to the debtor's unsecured creditors. The trustee accomplishes this by selling the debtor's property if it is free and clear of liens (as long as the property is not exempt) or if it is worth more than any security interest or lien attached to the property and any exemption that the debtor holds in the property. The trustee may also attempt to recover money or property under the trustee's "avoiding powers." The trustee's avoiding powers include the power to: set aside preferential transfers made to creditors within 90 days before the petition; undo security interests and other prepetition transfers of property that were not properly perfected under nonbankruptcy law at the time of the petition; and pursue nonbankruptcy claims such as fraudulent conveyance and bulk transfer remedies available under state law. . . .

*In re Tarrant*, 349 B.R. 870, 880 (Bankr. N.D. Ala. 2006) (*citing* www.uscourts.gov/ bankruptcycourts/bankruptcybasics). The duties of a chapter 7 trustee are defined in 11 U.S.C. §704.

Based upon the evidence submitted, including but not limited to the Trustee's Report and the United States Trustee's Letter, and the record created, the court finds that Hargrave was a disinterested person as defined by 11 U.S.C. §101(14). Plaintiffs have not alleged and indeed cannot allege that Hargrave was a creditor, an equity security holder, an insider, a director, officer, or employee of the Debtor. Plaintiffs have also failed to credibly allege that Hargrave possesses an interest materially adverse to the interest of the estate or of any class of creditors or for that matter any other reason that Hargrave was disinterested. On the other hand, Hargrave credibly certified that his involvement in the father's divorce action some 37 years ago was for a limited purpose. The court is at a loss how such representation would result in a materially adverse interest. The court agrees with Judge Wizmur that Hargrave's impartiality has been carefully and exhaustively considered and Hargrave satisfied the disinterested person requirement.

It is the duty of United States Trustee to supervise and oversee the administration of chapter 7 cases. The United States Trustee Letter undeniably evidences that the United States Trustee performed her duty in the Bankruptcy Case. In doing so, the United States Trustee concluded that Hargrave's actions in the Bankruptcy Case were consistent with his business

judgment and his fiduciary duty to the bankruptcy estate. That alone is sufficient enough for a determination that Hargrave fulfilled his required duties.

Nevertheless, the court has reviewed the submissions of the parties, the record of the Bankruptcy Case, the Trustee's Report and the United States Trustee Letter, and considered the arguments of the parties, and also concludes that Hargrave's actions in the Bankruptcy Case were consistent with his business judgment and his fiduciary duty to the bankruptcy estate. From its independent review, the court finds that the record is replete with evidence to support that Hargrave was at all times performing his primary role as a chapter 7 trustee and exercised sound business judgment. Based upon the Debtor's listing of a potential asset in her petition. i.e.. a purported right to an inheritance which included the Property, Hargrave sought to recover and/or administer potential assets. Reaching out to Plaintiffs was part of that duty. To suggest otherwise is ludicrous. When Hargrave determined in his business judgment[8] that he would not actively pursue the liquidation of the decedent estates, he obtained an *Order For Retention Of Asset After Closing Of Case,* filed a *Lis Pendens* against the Property, and filed notices to protect the bankruptcy estate interests, if any, in the decedent estates. Hargrave investigated alleged concealed assets and false social security numbers and determined in his business judgment, that they would not result in a benefit to the bankruptcy estate. Without a doubt, Hargrave performed his duties as chapter 7 trustee and did so properly. His actions were reasonable and sound. Just because Plaintiffs were upset about being contacted by Hargrave or that Hargrave failed to return phone calls is not enough for a finding that Hargrave failed to properly perform his duties. The evidence is clear that he did.

Plaintiffs also claim that Hargrave failed to perform his duty by failing to advise them of the Section 341 Meeting of Creditors (the "Meeting"). However, it is not the duty of the chapter 7 trustee to notify creditors of the Meeting. 11 U.S.C. §704. Indeed, in this case, such notification would have been impossible anyway because <u>the Debtor</u> did not list Plaintiffs as creditors[9] or parties-in-interest in the matter. The petition only identifies a "sister". Contrary to their contention, neither of Plaintiffs are specifically named. With no name and address. Plaintiffs could not be provided with notice of the Meeting. While Plaintiffs are offended that Hargrave sent them a letter only after that Meeting, in this court's experience, it is not unusual for a chapter 7 trustee to contact parties to investigate a potential asset after the Meeting. mainly because the chapter 7 trustee learns more about that potential asset at the Meeting.

---

[8] "The chapter 7 trustee needs to be provided a substantial degree of discretion in determining how to most effectively administer the bankruptcy estate. The court should review the trustee's actions utilizing a business judgment standard." *In re CHN Constr., LLC,* 531 B.R. 126, 132-33 (Bankr. E.D. Va. 2015) (citing *In re Cult Awareness Network, Inc.,* 205 B.R. 575 (Bankr.N.D.Ill.1997); *In re Wilson,* 94 B.R. 886 (Bankr.E.D.Va.1989)). "So long as the trustee's decision concerning how or whether to administer an asset or to pursue a cause of action falls within the proper scope of the trustee's business judgment, the trustee's decision [should] be upheld." *Id.* (citing *In re Consolidated Indus. Corp.,* 330 B.R. 712, 715 (Bankr.N.D.Ind.2005)). "The Court will not interpose its own business judgment for that of the Trustee." *Id.*

[9] Plaintiffs have also admitted that they are not creditors of the Debtor.

## B. The *Barton* Doctrine Applies

As tasked by the District Court in its November 25, 2015 Memorandum Opinion, this Bankruptcy Court must now determine whether the claims against Hargrave are barred by the *Barton* doctrine and, if not barred, grant leave to Plaintiffs to proceed in a court of competent jurisdiction.

In *Barton*, the Supreme Court held that "before suit is brought against a [bankruptcy] receiver, leave of the court by which he was appointed must be obtained." *Barton v. Barbour*, 140 U.S. 126, 128 (1881). The Third Circuit, applying *Barton*, recognizes that "a party must first obtain leave of the bankruptcy court before it brings an action in another forum against a bankruptcy trustee for acts done in the trustees official capacity." *In re VistaCare Group, LLC*, 678 F.3d 218, 224 (3d Cir. 2012). The *Barton* doctrine provides that absent leave of appointing court, no other court has jurisdiction to hear suit against the trustee. *In re DMW Marine, LLC*, 509 B.R. 497 (Bankr. E.D. Pa. 2014); *see also In re Steffen*, 406 B.R. 148 (Bankr. M.D. Fla. 2009). A party seeking leave of court to sue a trustee "must make a *prima facie* case against the trustee, showing that its claim is not without foundation." *VistaCare*, 678 F.3d at 232. Although the "not without foundation" standard applicable to motion seeking leave of court to sue trustee is similar to the standard that courts employ in evaluating motion to dismiss for failure to state claim, "not without foundation" standard involves a greater degree of flexibility. *Id.*

A narrow exception to the *Barton* doctrine exists where a trustee is actually operating the business, and only to "acts or transactions in conducting the debtor's business in the ordinary sense of the words or in pursuing that business as an operating enterprise." *In re Crown Vantage, Inc.*, 421 F.3d 963, 971-72 (9th Cir. 2005). Under these circumstances, an aggrieved party need not seek permission from the appointing court before filing suit against trustee in another forum. *VistaCare*, 678 F.3d at 227. This exception is codified at 28 U.S.C. § 959(a), which provides that:

> Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions *in carrying on business connected with such property*. Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury.

28 U.S.C. § 959(a) (emphasis added). It has been held that section 959(a) does not apply and leave of bankruptcy court is still required where a trustee "acting in his official capacity, conducts no business connected with debtor's property other than to perform administrative tasks necessarily incident to the consolidation, preservation, and liquidation of assets in estate." *VistaCare*, 678 F.3d at 227 (citing *In re Lehal Realty Assocs.*, 101 F.3d 272, 276 (2d Cir. 1996)). *See also Muratore v. Darr*, 375 F.3d 140, 145 (1st Cir. 2004) ("actions taken in the mere continuous administration of property under order of the court do not constitute an "act" or 'transaction' in carrying on business connected with the estate"). In this case, Hargrave did not carry on the business of the Debtor, an individual, but rather merely performed administrative

tasks necessarily incident to administration of the bankruptcy estate. Accordingly, the statutory exception does not apply.

Some courts have created a second exception to the *Barton* doctrine based in tort. Plaintiffs encourage this court look to *In the Matter of Mercy-Douglass Hospital, Inc.*, 364 F. Supp. 1066 (E.D. Pa. 1973) in finding a second exception to the *Barton* doctrine. However, the court is not persuaded by the tort exception and the holding in *Mercy-Douglass*. First, unlike this case, the suit against the *Mercy-Douglass* trustee arose in connection with his carrying on of the bankrupt's business. There was no business here. Second, the *Mercy-Douglass* court did not specifically address the *Barton* doctrine; rather, it was deciding whether a state court judgment against the trustee should be declared vacated. And finally, more recently, in *Lai v. Wisotsky (In re Lai)*, No. 02-37935 (NLW), 2006 WL 827794 (D.N.J. Mar. 30, 2006), a case more consistent with this case, the court relied on the *Barton* doctrine in requiring debtor to request permission from the bankruptcy court before filing and instituting a state court tort action claim against the Trustee personally. *See also Muratore v. Darr*, 375 F.3d at 147 (specifically rejecting *Mercy-Douglass* and finding that "we can find no basis for recognizing some generalized tort exception to the *Barton* doctrine."). This court believes the better approach is to recognize the only one statutorily allowed exception under 28 U.S.C. § 959(a), which, as noted above, does not apply in this case.

Pursuant to the *Barton* doctrine, Plaintiffs were required to obtain leave of the bankruptcy court before bringing the State Court Action. The *Barton* doctrine exception codified in section 959(a) does not apply here. Hargrave was not "carrying on business" of the Debtor[10], but rather performing his duty as trustee to preserve and administer the assets of the bankruptcy estate. Furthermore, the United States Trustee found that Hargrave's actions in this case were consistent with his fiduciary duty to the bankruptcy estate. Therefore, the *Barton* doctrine applies and Plaintiffs should have obtained leave of this court prior to filing the State Court Action.

While sanctions may be appropriate in cases where the *Barton* doctrine applies, *In re Steffen*, 406 B.R. 148, in this case, the court recognizes that Plaintiffs are unrepresented individuals and simply may not have known better. ***Nevertheless, Plaintiffs are now put on notice*** that the *Barton* doctrine applies, and any further suits without first seeking leave of this court, will result in Plaintiffs being sanctioned by the court.

## C.  Leave Of Court To Bring An Action Would Have Been Denied

Plaintiffs have not applied for leave of this court to bring an action against Hargrave, but even if they had, this application would be denied because Plaintiffs have failed to make a *prima facie* case against Hargrave, showing their claims are not without foundation. Pursuant to the Third Circuit's directive in *VistaCare*, 678 F.3d at 232, to analyze the "not without foundation" standard, this court will employ the motion to dismiss standard which is detailed below. Additionally, this analysis is necessary nevertheless in consideration of Hargrave's motion to dismiss the complaint with prejudice.

---

[10] The court also notes that this is a chapter 7 <u>individual</u> case, not a business case.

A Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim is made applicable in an adversary proceeding pursuant to Bankruptcy Rule 7012. Fed. R. Bankr. P. 7012; Fed. R. Civ. P. 12(b)(6). Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for failure to state a claim upon which relief may be granted. *Wells Fargo Equip. Fin., Inc. v. Alario*, No. 10-37591 MBK, 2011 WL 3510865, at *2 (Bankr. D.N.J. Aug. 9, 2011) "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint will survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). The plausibility standard requires that "the plaintiff plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and demands "more than a sheer possibility that a defendant has acted unlawfully." *Id*. Accordingly, "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id*.

Plaintiffs allege in their Complaint that Hargrave committed:

1. Professional Malpractice (hereinafter "Count One: Professional Malpractice");
2. Death caused due to negligence of defendants (hereinafter "Count Two: Death caused due to negligence");
3. Legal Malpractice (hereinafter "Count Three: Legal Malpractice"); and
4. Plaintiff Sandra Bender was hospitalized numerous times, including intensive care and had to undergo surgery due to stress caused by Defendant Hargrave (hereinafter "Count Four: Hospitalization due to stress caused by Defendant").

(Doc. 6-8, at 4). In support of their allegations, Plaintiffs state that:

Defendants neglected/withheld evidence to be submitted for due process. 5.51A. Attorney judgment caused him to do that which standard legal prudence forbids and the attorney's judgment caused him to omit something which is required by standard legal practice. Defendants departed from required standard of care, which resulted in injury and damages to the plaintiffs. 5.51C Defendants conduct fell below standard of care required by law for the protection of persons or property from foreseeable risks of harm. 5.51D Defendants failure to comply with the standard of care required by law to protect a person from foreseeable risks of harm.

(Doc. 6-8, at 3). Hargrave notes in his brief that the majority of the allegations in the Complaint are simply a recitation of the New Jersey Model Jury Charge for Legal Malpractice, which is quoted by section numbers. In response, Plaintiffs in their Opposition argue that:

It describes in more than necessary detail the facts outlining the circumstances from that behavior taken and how the Bender's had accumulated undue stress

from the acts or omissions taken or by lack thereof, be identified as professional malpractice. Stress so severe ultimately landing Sandra several trips to the emergency room and admitted to the hospital. End result, Sandra had to undergo surgery absent of any infections. The defendants' unprofessional misconduct set forth by the acts taken by the trustees is the very nature of the Bender's complaints. Far below what a professional standard ought to be whereas any ordinary reasonable person would affirm as negligence or intentional interference. The defendant persistently pursued contacting individuals whom are not privy to these matters. The trustees were not acting accordingly pursuant to 28 U.S.C. § 586(a). Intandem the defendants used their position and power in an effort to commit intentional and deliberate acts thus completely disengaging the concerns of the Bender's' claims being made. Further best describes the trustee's disconcertment towards Raymond J. Davidson and the Bender's. Additionally, the lack of duty and care in this matter ultimately caused the plaintiffs' sister, Lydia J. Bender, to suicide because "She could take this anymore."

(Doc. 12-2, at 8-9).

The Third Circuit has detailed what a court may consider in analyzing a motion to dismiss:

> As a general rule, the court may only consider the pleading which is attacked by an FRCP 12(b)(6) motion in determining its sufficiency. The court is not permitted to look at matters outside the record; if such matters are considered, the FRCP 12(b)(6) motion to dismiss is, by the express terms of FRCP 12(b), converted into a motion for summary judgment. However, the court may consider documents which are *attached* to or submitted with the complaint, as well as legal arguments presented in memorandums or briefs and arguments of counsel. Further, documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered. Documents that the defendant attaches to the motion to dismiss *are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim*; as such, they may be considered by the court.

*Pryor v. Nat'l Collegiate Athletic Ass'n.*, 288 F.3d 548, 560 (3d Cir. 2002) (emphasis in original).

This court finds that Plaintiffs' complaint cannot survive a motion to dismiss because it contains insufficient factual matter, if accepted as true, to state a claim to relief that is plausible on its face. Plaintiffs' complaint contains a formulaic recitation of the elements of the causes of action, the language in the complaint is pulled from the New Jersey Model Jury Charge for Legal Malpractice. "The allegations are themselves bare legal conclusions that do not provide a sufficient factual predicate to sustain the complaint under the standards enunciated in *Twombly* and *Iqbal*." *In re Herrera*, 472 B.R. 839, 849-50 (Bankr. D.N.M. 2012). There is no explicit recitation of actions in this case that on their face or through the supplemental factual allegations provided by Plaintiffs' in their Opposition and arguments in court, if accepted as true, would

establish a plausible claim to relief. Thus the complaint against Hargrave fails and must be dismissed.

### D.  Leave to Amend Complaint is Futile

Rather than dismiss a complaint, a court may grant leave to amend the complaint. Federal Fed. R. Civ. P. 15(a)(2). However, it is well established that a court may refuse to grant leave to amend a complaint where the amendment would be futile. *In re LG.Phillips Displays USA, Inc.*, 395 B.R. 864, 870 (Bankr. D. Del. 2008) (citing *Winer Family Trust v. Queen*, 503 F.3d 319, 330–31 (3d Cir. 2007)). An amendment is futile when the proposed pleading would not survive a motion to dismiss. *Id.* Thus, a court "may properly deny leave to amend where the amendment would not withstand a motion to dismiss." *Id.* (citing *Massarsky v. General Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983)).

Plaintiffs acknowledged at the hearing on March 1, 2016 that they had supplied the court with all evidence to support their claims against Hargrave and also had no further documents to support their claims. They also acknowledged that all submissions that could be relied on have been filed with this court and the District Court. The court has reviewed all submissions and concludes that an amendment would be futile. The futility of Plaintiffs' claims are detailed below.

### 1.    Count One: Professional Malpractice

To prove a cause of action for professional malpractice, a plaintiff must demonstrate the existence of a relationship creating a duty of care, a breach of that duty, and proximate causation between the breach and any damages sustained. *Safier v. Walder, Sondak & Brogan, P.C.*, No. A-5688-04T3, 2007 WL 1790707, at *7 (N.J. Super. Ct. App. Div. June 22, 2007) (citing *McGrogan v. Till*, 167 N.J. 414, 425 (2001)). Plaintiffs acknowledged that they shared no professional relationship with Hargrave. He was not Plaintiffs or the Debtor's attorney. Plaintiffs admittedly are not creditors of the bankruptcy estate. The court is at a loss as to the existence of a relationship that creates a duty of care. Plaintiffs certainly have not established one.  Even if a relationship could be found, the United States Trustee and this court have determined that Hargrave acted appropriately and his actions were consistent with his business judgment and his fiduciary duty to the bankruptcy estate. In short, there was no breach of duty. Since there was no relationship and no breach of duty, there simply can be no cause of action for professional malpractice. An amendment would not withstand a motion to dismiss and would be futile.

### 2.    Count Two: Death caused due to negligence

The Debtor died on June 23, 2013. Plaintiffs aver that Hargrave was solely and directly responsible for the Debtor's death. Plaintiffs acknowledged that they knew immediately that Hargrave was responsible for the Debtor's death. Plaintiffs were not and are not dependents of the Debtor. Plaintiffs are not the trustee, administrator, executor, or appointed representative of, and in fact have nothing to do with, the Debtor's decedent estate. N.J.S.A. 2A:31-3 provides for a two year statute of limitations for wrongful death cases, and the cause of action accrues upon death. Plaintiffs' Complaint was filed on July 24, 2015, more than two (2) years after the death

of the Debtor; as such, the claim is time-barred. An amendment would not withstand a motion to dismiss and would be futile.

### 3.    Count Three: Legal Malpractice

The elements of a claim for legal malpractice are: (1) an attorney-client relationship, thus giving rise to a duty of care; (2) breach of that duty of care; and (3) damages proximately caused by the breach. *In re O'Brien*, 423 B.R. 477, 499 (Bankr. D.N.J. 2010) *aff'd sub nom. Cleveland v. O'Brien*, No. CIV 10-3169 GEB, 2010 WL 4703781 (D.N.J. Nov. 12, 2010). An attorney-client relationship ordinarily requires mutual consent whereby the client seeks legal advice and the lawyer accepts responsibility. *Id.* As a general rule, an attorney's duty of loyalty runs to his client, and not to third parties with whom he has no agency relationship. *In re Yellowstone Mountain Club, LLC*, No. 08-61570-11, 2013 WL 1099155, at *5 (Bankr. D. Mont. Mar. 15. 2013). Like with the their claim for professional malpractice, Plaintiffs admit that they shared no attorney-client relationship with Hargrave. Thus, Plaintiffs cannot establish the first element required for the cause of action.

Under certain circumstances, an attorney may be liable to a non-client. *In re O'Brien*. 423 B.R. at 499 (citing *Petrillo v. Bachenberg*, 139 N.J. 472 (1995) (typically courts limit a lawyer's duty to situations where the lawyer should have foreseen that the third party would rely on the lawyer's work)). Here, Hargrave was not acting in his capacity as a lawyer; he was the chapter 7 trustee. There is simply no way Hargrave should have foreseen that Plaintiffs were relying on his work as a lawyer because he was not acting in the role of a lawyer but rather that of the chapter 7 trustee. Moreover, since Hargrave's interests were potentially adverse to Plaintiffs' interests, Hargrave could not have foreseen that they would rely on his work as a lawyer.

Even if a lawyer relationship creating a duty of care could be found, Hargrave acted appropriately and his actions were consistent with his business judgment and his fiduciary duty to the bankruptcy estate. There was no breach of duty. Since there was no relationship, foreseen or otherwise, and no breach of duty, there simply can be no cause of action for legal malpractice. An amendment would not withstand a motion to dismiss and would be futile.

### 4.    Count Four: Hospitalization due to stress caused by Hargrave[11]

At the March 1 Hearing, Plaintiffs were given the opportunity to flesh out the claim under Count Four. A claim of direct, negligent infliction of emotional distress requires a plaintiff to show that the defendant had a duty, the defendant owed the duty toward the plaintiff, and that the defendant breached that duty, proximately causing the plaintiff's injury of genuine and substantial emotional distress. *Lascurain v. City of Newark*, 349 N.J. Super. 251, 277 (App. Div. 2002) (citing *Decker v. Princeton Packet, Inc.*, 116 N.J. 418, 429-30 (1989); *Lacy v. Cooper Hosp./University Med. Ctr.*, 745 F. Supp. 1029, 1035 (D.N.J. 1990)). Whether the defendant has a duty of care to the plaintiff depends on whether it was foreseeable that the plaintiff would be seriously, mentally distressed. *Id.* Hargrave had no specific duty of care towards Plaintiffs. In addition, the alleged injury was not foreseeable. Hargrave was simply performing his primary role as a chapter 7 trustee in the administration of the case. By contacting Plaintiffs and others,

---

[11] This Count pertains only to Plaintiff Sandra Bender.

he was performing administrative tasks necessarily incident to the consolidation, preservation. and liquidation of assets in estate. Hargrave, on information supplied by the Debtor, advised Plaintiffs of the bankruptcy estate's potential claim to the decedent estates and the Property. This is not a case where he acted carelessly or recklessly. He did not take anything from Plaintiffs. He did not take action against them. He did not deprive them of anything. Moreover, if he takes action, Plaintiffs' rights and defenses are preserved. Rather, he simply advised Plaintiffs that he believed he had potential claims against the Property and distributions from the decedent estates. He asked Plaintiffs to take action and threatened to do so if they did not. Ultimately, he did not. This is not enough to satisfy the elements for the cause of action. The court also notes that Plaintiffs are adamant about the bankruptcy estate/Hargrave having no rights to the potential assets. If they know this to be true, then it certainly was not foreseeable that Plaintiffs would be seriously, mentally distressed over Hargrave's demand. An amendment would not withstand a motion to dismiss and would be futile.

In addition, under New Jersey law, in order to recover for the intentional infliction of emotional distress, a plaintiff must establish:

> (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.

*Young v. Hobart West Group,* 385 N.J. Super. 448, 467-68 (N.J. Super. A.D. 2005) (internal quotations and citations omitted). The plaintiff must establish that the distress was "so severe that no reasonable man could be expected to endure it." *Buckley v. Trenton Saving Fund Soc.,* 111 N.J. 355, 366 (1988) (citation omitted). Based upon the evidence submitted, Plaintiffs cannot prevail on a claim for intentional infliction of emotional distress. There is absolutely no evidence showing that Hargrave intended to inflict or should have known he was inflicting emotional distress. Hargrave was simply performing administrative tasks necessarily incident to the consolidation, preservation, and liquidation of assets in estate. His conduct was not extreme and outrageous. A reasonable man can be expected to endure communications from a chapter 7 trustee especially when they are sure that the trustee has no claim. An amendment would not withstand a motion to dismiss and would be futile.

Accordingly, the court will dismiss Plaintiffs' complaint with prejudice.

### E. Plaintiffs Are Barred From Filing Future Lawsuits Against John W. Hargrave Without First Seeking Leave Of This Court.

The court cannot permanently ban all future suits filed by Plaintiffs against Hargrave. The *Barton* doctrine does not stand for that proposition. There may be other causes of actions completely unrelated to the issues already presented to the court. Indeed, the court foresees one potential for suit (whether right or wrong) as a result of the *Amended Order For Retention Of Asset After Closing Of Case* dated July 11, 2013. That order specifically states that all issues related to the estate of Herta Bender and Bernard Bender may be resolved in the appropriate forum. including the issue of whether, and to what extent, the Debtor is entitled to a distribution from either

her mother's or father's estates. As the court explained during the March 1 Hearing, this language contemplates that the parties may someday be at odds with regard to the decedent estate distribution/liquidation of assets and the parties' rights are reserved with regard thereto. Today, however, nothing is ripe for consideration on that issue, and ultimately, this court may not be the appropriate forum to consider the issue.

Nevertheless, should a new cause of action arise, Plaintiffs are barred from filing future lawsuits against John W. Hargrave without first seeking leave of this court. Plaintiffs are again cautioned that violation of the *Barton* doctrine **will** result in Plaintiffs being sanctioned by the court.

## CONCLUSION

For the foregoing reasons:

1.  Plaintiffs are denied leave to proceed with the State Court Action or any action against John W. Hargrave in other forums;

2.  The Adversary Proceeding is dismissed with prejudice; and

3.  Plaintiffs Robbin Bender and Sandra Bender are barred from filing future lawsuits against John W. Hargrave without first seeking leave of this court.

The court reserves the right to further supplement its findings of fact and conclusions of law.

An appropriate judgment has been entered consistent with this decision and is enclosed.

/s/ Andrew B. Altenburg, Jr.
United States Bankruptcy Judge

Dated: March 9, 2016